# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:_____

Dacqui D. Archer Jr.,

Plaintiff,

v.

Akima, LLC and Five Rivers Services, LLC

Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, Dacqui D. Archer Jr., ("Archer") by and through his undersigned attorney, for his Complaint against Defendants alleges and states as follows:

### JURISDICTION AND VENUE

1.  This is a complaint for violations of the Rehabilitation Act of 1973, 29 U.S.C.§701, e*t. seq.* ("Rehabilitation Act"), and Wrongful Discharge in Violation of Public Policy.

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 (Federal Question Jurisdiction), 42 U.S.C. §1334 (Civil Rights Jurisdiction), 28 U.S.C. §1332 (Diversity Jurisdiction), and 42 U.S.C. §1367 (Supplemental Jurisdiction).

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (3).

### PARTIES

4.  Defendant Akima, LLC ("Akima") is a foreign corporation doing substantial

1

business in Colorado, registered with the Colorado Secretary of State and in Good Standing.

5. Defendant, Five Rivers Services, LLC ("Five Rivers") is a foreign corporation doing business in Colorado with its principal place of business address of 10807 New Allegiance Drive, Suite 350, Colorado Springs, CO 80921.

6. Akima and Five Rivers receive federal funds and are subject to compliance with the Rehabilitation Act.

7. Archer is a resident of the State of Georgia.

## GENERAL ALLEGATIONS

8. Akima and Five Rivers (collectively "Defendants") provide full-spectrum communications, information technology, network operations, video teleconferencing, audiovisual, multimedia, command and control communications, computers, intelligence, surveillance and reconnaissance services and solutions to Department of Defense, Federal Government agencies and the commercial sector.

9. Defendants operate in Iraq, Afghanistan, Kuwait, Djibouti, and several continental U.S. locations.

10. On or about April 7, 2017 Defendants made Archer an offer of employment for the position of Service Desk Administrator I for its OMDAC-SWACA contract in Kuwait.

11. The Service Desk Administrator/Technician position requires work in an open office area to "sit and talk on the phone for long period of time." The only physical requirement is the ability to lift up to 20 pounds.

12. Defendants agreed to pay Archer sick leave in accordance with Kuwait law.

13. Defendants further agreed that Archer's employment would be governed and

construed in accordance with U.S. Federal law and the laws of the State of Colorado.

14. Defendants were Archer's employer within the meaning of the Rehabilitation Act.

15. On or about November 13, 2017 Archer was directed to conduct Information Assurance training as part of his training requirements.

16. The training was held on Wednesday, November 15, 2017.

17. The training was located at Camp AJ, which required Archer to use the company vehicle to drive to the training site.

18. In route to the training location, while in the course of his employment, Archer was involved in a hit and run motor vehicle accident when an SUV hit the rear passenger side of his vehicle causing the vehicle to spin off the highway.

19. As a result, Archer sustained injuries to his neck and back.

20. On November 21, 2017 Archer sought medical treatment for his injuries complaining of cervical, dorsal and lumbar back pain with tingling and numbness in both upper and lower limbs. His standing and walking were severely limited.

21. An MRI revealed C4-C5 Right Posterolateral Bulge, L4-L5 Diffuse Bulge and L5-S1 Posterior Protrusion.

22. Archer was diagnosed with a Severe Cervicodorsal Back Sprain.

23. As a result of his condition Archer was substantially limited in the major life activities of walking, standing, sitting, working and caring for himself.

24. As a result, Archer applied for and was approved for workers' compensation coverage.

25. Defendants approved Archer for medical leave until July 2018.

26. On March 13, 2018 Archer saw his physician who indicated continued treatment and spinal injections, which was a minor surgery for Nerve Root Steroid injection into the spine.

27. A second MRI revealed that Archer's condition had not improved but had worsened.

28. On March 15, 2018 Archer's Worker's Compensation Adjuster sent Archer to see another doctor who stated that Archer was able to return to work with no restrictions.

29. The doctor did not provide Archer with a copy of his medical report nor did he inform Archer that he had determined that Archer was able to return to work with no restrictions.

30. On March 26, 2018 Archer's Worker's Compensation Adjuster sent Archer an email stating that the doctor's report indicated that Archer was able to return to work with no restrictions.

31. On March 27, 2018 Archer responded that his authorized treating physician had not released him to return to work and had prescribed additional injections.

32. In fact, Archer had not been released to return to full duty as of March 18, 2018 by his treating physicians, Dr. Ahmed Mokhtar (spine surgeon), and Dr. Sherif Youssef Abdalla (orthopedic surgeon).

33. Archer's treating physicians further indicated that as of March 28, 2018 Archer was totally incapacitated but his restrictions were temporary and he would be re-evaluated on May 1, 2018.

34. As a result, Archer continued his pursuit of workers' compensation coverage.

35. In early April, 2018 Archer had a surgical procedure in the form of a nerve root steroid injection at Alia International Hospital in Kuwait. The procedure left him unable to

4

urinate or make a bowel movement and the lower half of his body numb.

36. On April 4, 2018 Archer's supervisor sent Archer his work schedule for the service desk where Archer worked. The schedule confirmed that Archer was still on medical leave until July 2018.

37. On April 5, 2018 Archer sent a letter indicating that he had not been released to return to work and was hospitalized due to a reaction to injections causing him to be unable to urinate.

38. On April 6, 2018 Defendants sent Archer a letter stating that it had been alerted that Archer was medically cleared to return to work as of March 18, 2018 with no restrictions.

39. Defendants further indicated that Archer's employment had been terminated effective March 18, 2018 based on job abandonment.

40. At no time did Defendants request Archer to return to work or indicate that he had been put back on the schedule.

41. Defendants further stated in the letter that previous attempts to contact Archer had been unsuccessful.

42. This was a lie. Defendants had made no attempt to contact Archer about his medical condition or returning to work either by letter, phone or email, after it had allegedly been alerted that Archer had been cleared to return to work with no restrictions as of March 18, 2018.

43. All of Archer's contact information was known to Defendants and Defendants had not contacted Archer since February 2018.

44. Archer did not abandon his job but was in constant communications with his workers' compensation adjuster about the status of his condition.

5

45. As of April 6, 2018 Archer's authorized treating physician opined that Archer was totally incapacitated and unable to work.

46. At the time the termination letter was sent Defendants had not made a good faith attempt to engage in the interactive process with Archer.

47. At the time the termination letter was sent Archer was able to perform the essential functions of his job with accommodation of additional leave to allow him time to recover.

48. Archer was to be reevaluated by his treating physician as of May 1, 2018 and Defendants had approved his time-off until July 2018.

49. Additional leave is considered an acceptable accommodation under the Rehabilitation Act.

50. Allowing Archer time to recover was a reasonable accommodation that would have allowed Archer to perform the essential functions of his job.

51. Defendants made no attempt to engage in the interactive process.

52. After Archer notified Defendants that he had not been medically cleared to return to work Defendants continued its past practice of failing to engage in the interactive process.

53. The refusal of Defendants to engage in any process–much less, an interactive one–to determine an appropriate accommodation so that Plaintiff could return to work resulted in his pretextual, discriminatory and retaliatory termination.

54. Despite Archer's request for reasonable accommodations for his actual or perceived disabilities Defendants routinely denied Plaintiff's rights under the Rehabilitation Act.

**FIRST CLAIM FOR RELIEF**
Disability Discrimination in Violation of the Rehabilitation Act

55. Plaintiff incorporates by this reference all preceding paragraphs as though fully set forth herein.

56. As fully set forth herein Plaintiff was qualified for his position as he had been successfully performing all of the duties of the position for approximately six-months from his hire date until the time he sustained his injuries.

57. In addition, Plaintiff was able to perform the essential functions of his position with an accommodation of additional leave, which Plaintiff requested.

58. Despite Plaintiff's request for reasonable accommodations for his perceived or actual disability, Defendants, their agents, and employees denied Plaintiff's statutory rights under the Rehabilitation Act in accordance with a pattern, practice, or custom.

59. Even when Defendants were provided with medical documentation the day after the termination indicating that Plaintiff was unable to return to work, Defendants failed and refused to engage in any manner of "interactive process" with Plaintiff to determine an appropriate accommodation, in a manner contrary to Plaintiff's rights under the foregoing federal anti-discrimination law.

60. Defendants' approval of Mr. Archer's leave through July 2018 indicates that Defendant could accommodate Plaintiff's requested accommodation(s) without undue hardship.

61. As a direct and proximate result of the acts and omissions described herein, Plaintiff has suffered and incurred, or may be reasonably expected to suffer or incur, the following damages and other losses, including but not limited to: lost income or employment compensation and fringe benefits, thereby justifying appropriate awards to Plaintiff of front pay and back pay; damage to reputation and character, credit rating or creditworthiness, emotional or

mental anguish, distress, upset, humiliation, embarrassment, or degradation, pain and suffering; and other consequential, incidental, or related damages to Plaintiff's employment rights, privileges, interests, as well as statutory interest, and reasonable attorney's fees and costs incurred in connection herewith.

## SECOND CLAIM FOR RELIEF
Retaliation in Violation of the Rehabilitation Act

62. Plaintiff incorporates by this reference all preceding paragraphs as though fully set forth herein.

63. As described more fully above, Mr. Archer's continued requests for a reasonable accommodation in March 2018 was protected activity under the Rehabilitation Act.

64. Defendants' refusal to engage in the interactive process then terminating Plaintiff's employment is an adverse action.

65. The unlawful employment practices complained of in the foregoing paragraphs were intentional and done with malice or with reckless indifference to Mr. Archer's federal protected rights.

66. Defendants' actions directly and proximately caused damages incurred by Mr. Archer, entitling him to the remedies enumerated below.

## THIRD CLAIM FOR RELIEF
Failure to Provide a Reasonable Accommodation

67. Plaintiff incorporates by reference all proceeding paragraphs as though fully set forth herein.

68. As described more fully above, Plaintiff is a qualified individual with a disability.

69. Defendants failed to make reasonable accommodation to Plaintiff's physical limitations by granting leave in order to allow Plaintiff time to recover from his medical condition.

70. Defendants failed to initiate or engage in the interactive process with Plaintiff in good faith in order to identify the precise limitations resulting from his disability and any potential accommodations that could overcome those limitations.

71. Plaintiff has been subjected to discrimination by Defendants as described more fully in the Factual Allegations section of this Complaint.

72. Defendants interfered with Plaintiff's rights as described more fully in the Factual Allegations section of this Complaint.

73. The unlawful employment practices complained of in the foregoing paragraphs were intentional and done with malice or with reckless indifference to Plaintiff's federally protected rights.

74. Defendants' actions violated the Rehabilitation Act of 1973 and directly and proximately caused damages incurred by Plaintiff, entitling her to the remedies enumerated below.

### FOURTH CLAIM FOR RELIEF
Wrongful Discharge in Violation of Public Policy

75. Plaintiff incorporates by reference all proceeding paragraphs as though fully set forth herein.

76. At all times relevant hereto Archer was employed by Defendants.

77. During the course of his employment with Defendants, Archer suffered a work-related injury.

78. As a result of that injury Mr. Archer filed a workers' compensation claim pursuant to the U.S. Department of Labor, Division of Workers' Compensation Program.

79. Archer's injury comes within the course of the Longshore and Harbor Workers' Compensation Act 33 U.S.C. § 901 et seq. as extended by the Defense Base Act, 42 U.S.C. § 651 et set.

80. Workers' Compensation programs constitute public policy that truly impacts the public.

81. Workers' Compensation programs were enacted for the protection of the public at-large, thereby serving a public interest.

82. The Workers' Compensation program provides statutory support for Mr. Archer's common law claim for wrongful discharge in violation of public policy.

83. In accordance therewith, in March 2018 Mr. Archer sought continued coverage for his work related injury.

84. Defendants terminated Mr. Archer in retaliation for his exercise of his rights under the applicable Workers' Compensation Program.

85. As a direct and proximate result of Defendants' illegal acts, Mr. Archer suffered damages including but not limited to loss of pay, loss of job, loss of benefits, other economic losses, mental and emotional injuries, loss of self-esteem, loss of reputation, humiliation, interruption of career path, related injuries of a similar nature and reasonable attorneys' fees and costs.

86. Defendants' actions in terminating Mr. Archer were willful or done with reckless indifference to Mr. Archer's rights entitling him to punitive damages.

WHEREFORE, Plaintiff prays for an award of all relief requested herein and that this Court enter judgment in his favor and award him all relief as allowed by law, including, but not limited to, the following:

a. Actual economic damages as established at trial;

b. Compensatory damages including, but not limited to, those for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

c. Punitive damages;

d. Pre-judgment and post-judgment interest at the statutory rate;

e. Tax set-off.

f. Attorneys' fees, costs and expenses; and

g. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Dated: April 6, 2019.

Robinson & Associates Law Office, LLC

/s Jennifer C. Robinson                    /
Jennifer C. Robinson, Esq.
Robinson & Associates Law Office, LLC
7900 E. Union Ave., Suite 1100
Denver, CO  80237
Tel. (303) 872-3063
jrobinson@raemployment.com
ATTORNEY FOR PLAINTIF

Copy sent to Plaintiff: