**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 19-cv-01025-REB-KMT

DACQUI D. ARCHER, JR.,

    Plaintiff,

vs.

AKIMA, LLC, and
FIVE RIVERS SERVICES, LLC,

    Defendants.

## ORDER RE:  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

    The matters before me are (1) **Defendants' Motion for Summary Judgment** [#72],[1] filed March 30, 2020; and (2) plaintiff's **Motion To Strike Declaration of Scott Bohinc and Related Testimony and Defense** [#74], filed April 9, 2020.  I grant the summary judgment motion in part and deny it in part and deny the motion to strike testimony as moot.

## I. JURISDICTION

    I have jurisdiction over this matter under both 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity of citizenship).

## II. STANDARD OF REVIEW

    Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(a);

---

[1] "[#72]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  ***Concrete Works***, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  ***Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

Plaintiff Dacqui Archer was employed by defendant Five Rivers Services, LLC ("FRS"), a wholly-owned subsidiary of defendant Akima, LLC ("Akima"), as a Service Desk Administrator I at Camp Arifjan in Kuwait.  Mr. Archer was employed under a one-year contract beginning April 29, 2017.

On November 15, 2017, Mr. Archer was injured in a motor vehicle accident while en route to a work-related training. He was approved for medical leave and began receiving workers compensation benefits under the Defense Base Act retroactive to the date of his injury.[2] Mr. Archer's medical leave was approved with no definitive return-to-work date.

Viewed in the light most favorable to Mr. Archer as the non-movant, the evidence indicates that defendants began considering his termination as early as February 2018, shortly after Mr. Archer notified his supervisor that he was disabled and still undergoing physical therapy and evaluations. Shortly thereafter, defendants began to question whether and, if so, to what extent Mr. Archer in fact was injured. Defendants therefore requested Mr. Archer undergo an Independent Medical Evaluation ("IME"), which was performed on March 15, 2018. The IME examiner concluded Mr. Archer had reached maximum medical improvement and was able to return to work without restrictions effective March 18, 2018.

On March 26, the benefits administrator notified Mr. Archer that it was terminating his benefits. FRS received notice of the results of the IME that same day and claims it attempted, albeit unsuccessfully, to contact Mr. Archer about his return to work date. When it could not reach him, defendants concluded Mr. Archer had

---

[2] The Defense Base Act, 42 U.S.C. §§ 1651-1655, extends the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.*, to provide federal workers' compensation coverage for injuries suffered by certain classes of employees working outside the United States, including employees working on military bases. 42 U.S.C. § 1651(a)(1). The Act "provide[s] uniformity and certainty in availability of compensation for injured employees on military bases outside of the United States." *Marshall v. Exelis Systems Corp.*, 2015 WL 1433274 at *3 (D. Colo. March 26, 2015) (quoting *Davila–Perez v. Lockheed Martin Corp.*, 202 F.3d 464, 468 (1st Cir. 2000)) (internal quotation marks omitted).

abandoned his job and terminated his employment on April 6, 2018, effective March 18, 2018.

According to Mr. Archer, however, during this same period of time, he had been evaluated by his own treating physicians, both of whom indicated he required surgery and was as yet unable to return to work. He maintains defendants were already contemplating terminating his employment before they received notice of the results of the IME. He further claims he was never informed that he was required to report to work on a specific date, that he had not been scheduled to work at any point between the date of the IME and his termination, and that he had not abandoned his job as that term is defined in defendants' relevant policies. Moreover, on April 1, 2018, Mr. Archer underwent back surgery and was hospitalized for a number of days due to complications which rendered his lower body numb and caused him to be unable to control his bladder or bowels for some period of time thereafter.

Mr. Archer brings claims of disability discrimination, retaliation, and failure to accommodate under the Rehabilitation Act, 29 U.S.C. §§ 701-796*l*.[3] Section 504(a) of the Act provides, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination *under any program or activity receiving Federal financial assistance* . . . .

29 U.S.C. § 794(a) (emphasis added). "Congress limited the scope of § 504 to those

---

[3] The Rehabilitation Act expressly incorporates the standards of the Americans With Disabilities Act, 29 U.S.C. § 794(d), and courts therefore will look to caselaw interpreting the ADA in analyzing cases under the Rehabilitation Act, *see Sanchez v. United States Department of Energy*, 870 F.3d 1185, 1195 n.3 (10th Cir. 2017).

who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." ***U.S. Department of Transportation v. Paralyzed Veterans of America***, 477 U.S. 597, 605, 106 S.Ct. 2705, 2711, 91 L.Ed.2d 494 (1986).  ***See also Consolidated Rail Corporation v. Darrone***, 465 U.S. 624, 633, n.13, 104 S.Ct. 1248, 1254, n.13, 79 L.Ed.2d 568 (1984) ("Congress apparently determined that it would require contractors and grantees to bear the costs of providing employment for the handicapped as a *quid pro quo* for the receipt of federal funds.").  An employer which chooses not to accept such funds – or to which such funds are simply not available – is "free to avoid the requirements" of the Act.  ***Paralyzed Veterans of America***, 106 S.Ct. at 2711.

Thus, notwithstanding Mr. Archer's argument to the contrary, the receipt of federal financial assistance is not an affirmative defense but rather an essential element of his prima facie case under the Rehabilitation Act.[4]  ***See McGeshick v. Principi***, 357 F.3d 1146, 1150 (10th Cir. 2004); ***Spencer v. U.S. Postal Service***, 2009 WL 5217981 at *4 (D. Colo. Dec. 29, 2009), ***aff'd***, 388 Fed. Appx. 785 (10th Cir. July 21, 2010). Because he has failed to establish this element, his Rehabilitation Act claims must be dismissed.[5]

For this same reason, Mr. Archer's motion to strike the testimony of defendants'

---

[4] Because I find Mr. Archer has failed to carry his burden of proof as to defendants' receipt of federal financial assistance, I do not address whether he could prove the other elements of such a claim. ***See McGeshick***, 357 F.3d at 1150 (viable prima facie case under Rehabilitation Act also requires proof "that the plaintiff is disabled under the Act," "that he would be 'otherwise qualified' to participate in the program," and "that the program has discriminated against the plaintiff.").

[5] Because I reach this conclusion, I do not address the remainder of defendants' arguments regarding the viability of Mr. Archer's Rehabilitation Act claims.

representative affirmatively establishing that defendants do not receive such funds is essentially moot. Because it is Mr. Archer who must establish that defendants in fact do receive such funds, defendants do not require Mr. Bohinc's testimony to support their argument. Instead, it is sufficient for them to deny they receive federal funds and put Mr. Archer to his burden to prove otherwise. **See Celotex Corp. v. Catrett**, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."). **See also Adler v. Wal-Mart Stores, Inc.**, 144 F.3d 664, 671 (10th Cir. 1998). I therefore deny the motion to strike as moot.[6]

Mr. Archer also has asserted a claim of wrongful termination in violation of public policy. Such a claim is cognizable under Colorado law, **Martin Marietta Corp. v. Lorenz**, 823 P.2d 100, 109 (Colo. 1992), and has been recognized particularly in the context of a claim for retaliatory termination for exercise of the right to seek workers' compensation benefits, **Lathrop v. Entenmann's, Inc.**, 770 P.2d 1367, 1372-73 (Colo. App. 1989). Specifically, Mr. Archer claims he was fired in retaliation for requesting continuation of his workers' compensation benefits in March 2018. **See Barlow v. C.R. England, Inc.**, 703 F.3d 497, 509 (10th Cir. 2012) ("Colorado law protects an employee's ongoing receipt of workers' compensation benefits, not just the employee's initial filing.").

---

[6] I reject Mr. Archer's suggestion that he should be allowed to respond to this argument on the merits if the court denies the motion to strike. If Mr. Archer had evidence to rebut defendants' insistence that they do not receive federal funds, he had more than adequate opportunity to present it in the context of his response to the summary judgment motion.

Before proceeding, I must first consider defendants' argument that Akima was not Mr. Archer's employer.[7] There are two recognized tests for determining whether an ostensibly separate corporate entity may be considered an employee's employer. The "integrated enterprise" or single-employer test "permits a plaintiff who is the employee of one entity . . . to hold another entity liable by arguing that the two entities effectively constitute a single employer." ***Knitter v. Corvias Military Living, LLC***, 758 F.3d 1214, 1226 (10th Cir. 2014). By contrast, "the joint-employer test assumes that the alleged employers are separate entities," and seeks to determine whether both entities are the employer. ***Bristol v. Board of County Commissioners of County of Clear Creek***, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc). Thus, while "the joint employer test . . . focuses on the relationship between an employee and its two potential employers, the single employer test focuses on the relationship between the potential employers themselves." ***Knitter***, 758 F.3d at 1227.

Relying on the single-employer test, defendants maintain that Akima was not Mr. Archer's employer because he cannot prove the two entities were not truly separate and distinct companies. ***See Bristol***, 312 F.3d at 1220 (distinct entities constitute a single employer where there is evidence of "(1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control") (citation and internal quotation marks omitted). Referring instead to the joint-employer test, Mr. Archer argues that Akima may be considered his employer

---

[7] The elements of a claim of wrongful discharge for exercising a job-related right are "[1] that [the employee] was employed by the defendant; [2] that the defendant discharged him or her; and [3] that the defendant discharged him or her in retaliation for exercising a job-related right or performing a specific statutory duty, or that the termination would undermine a clearly expressed public policy." ***Mullin v. Hyatt Residential Group, Inc.***, 82 F.Supp.3d 1248, 1252 (D. Colo. 2015) (citation and internal quotation marks omitted), ***as amended*** (March 10, 2015).

7

because it "share[d] or co-determine[d] those matters governing the essential terms and conditions of his employment." *Id.* at 1218 (citation and internal quotation marks omitted). *See also Sizova v. National Institute of Standards & Technology*, 282 F.3d 1320, 1330 (10th Cir. 2002) ("An independent entity with sufficient control over the terms and conditions of employment of a worker formally employed by another is a joint employer[.]") (citation omitted).

Under either test, the most important consideration is whether Akima had control over the terms and conditions of Mr. Archer's employment, and in particular, the right to terminate his employment. *See Bristol*, 312 F.3d at 1219 (under joint-employer test, "[m]ost important" consideration "to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances."); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993) (under integrated enterprise theory, "[t]he critical question is, [w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?") (citation and internal quotation marks omitted). Here, Mr. Archer presents evidence suggesting that representatives of Akima were directly and intimately involved in the decision to terminate his employment. (*See* **Plf. Resp. App.**, Exh. 4.)[8] At the very least, this creates a genuine dispute of material fact sufficient to withstand summary judgment on this issue. *Bristol*, 312 F.3d at 1221 ("As a general rule, determining whether an entity qualifies as an employer is a fact issue for the jury.") (internal quotation marks omitted).

---

[8] Given this evidence, defendants' citation to caselaw acknowledging that a parent company cannot be held liable as a joint employer for merely acting as an administrator of a subsidiary's employee benefits program thus is inapposite. (*See* **Def. Motion** at 10-11 (citing *Frank*, 3 F.3d at 1363).

*See also Camara v. Sanchez*, 2013 WL 9721026 at *3 (D. Colo. Sept. 23, 2013).

Moreover, Mr. Archer also has presented sufficient evidence to create a genuine issue of material fact as to whether defendants terminated him for his ongoing receipt of workers compensation benefits. Although defendants insist this could not possibly be the case because Mr. Archer was fired on April 6, 2018, nearly three weeks after his workers compensation benefits terminated, there is evidence from which a reasonable jury could find otherwise. Specifically, Mr. Archer presents evidence suggesting defendants were considering terminating his employment as early as February 2018, after Mr. Archer notified his supervisor that he was continuing physical therapy and still had no definitive end date for his medical leave. (*See* **Plf. Resp. App.**, Exh. 1 at 120, Exh. 4 at 1.) There further is evidence from which a jury reasonably could conclude that defendants were processing termination documents well before they became aware of the results of Mr. Archer's March 2018 IME, which was used to justify the termination of his benefits. (*See id.*, Exh. 1 at 37, 40-141, Exh. 4 at 3-7.)

Thus, taking the evidence in the light most favorable to Mr. Archer, there are genuine disputes of material fact as to his claim for wrongful discharge in violation of public policy which make summary judgment inappropriate.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants' Motion for Summary Judgment** [#72], filed March 30, 2020, is granted in part and denied in part, as follows:

    a. That the motion is granted as to Mr. Archer's Rehabilitation Act claims,

and those claims are dismissed with prejudice; and

b.  That the motion is denied as to Mr. Archer's claim for wrongful discharge in violation of public policy;

2.  That Mr. Archer's **Motion To Strike Declaration of Scott Bohinc and Related Testimony and Defense** [#74], filed April 9, 2020, is denied as moot; and

3.  That at the time judgment enters, judgment with prejudice shall enter on behalf of defendants, Akima, LLC, and Five Rivers Services, LLC, and against plaintiff, Dacqui D. Archer, Jr., as to Mr. Archer's claims under the Rehabilitation Act.

Dated June 2, 2020, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge