IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 19-cv-01025-REB-NRN

DACQUI D. ARCHER, JR.

    Plaintiff,

v.

AKIMA, LLC, and FIVE RIVERS SERVICES, LLC,

    Defendants.

## ORDER DENYING DEFENDANTS' RENEWED
## MOTION FOR JUDGMENT AS A MATTER OF LAW

**Blackburn, J.**

The matter before me is **Defendants' Motion for Judgment as a Matter of Law or, Alternatively, To Set Aside the Judgment and Order a New Trial** [#133],[1] filed March 25, 2022. I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship). I deny the motion.

This case was tried on a jury on February 23-25, 2022, on plaintiff Dacqui Archer's sole remaining claim of wrongful termination in violation of public policy. Specifically, Mr. Archer claimed his quondam employer, defendants Akima, LLC, and Five Rivers Services, LLC, terminated his employment in retaliation for his filing and pursuit of a workers compensation claim.

---

[1] "[#133]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

At mid-trial and again at the close of the evidence, defendants moved for judgment as a matter of law pursuant to Rule 50.  I denied the motion and submitted the case to the jury.  The jury found in favor of Mr. Archer and awarded him $6,000 in economic damages, $108,000 in noneconomic damages, and $74,000 in punitive damages.  Defendants now seek judgment as a matter of law or a new trial.

In support of their motion, defendants point first to the court's refusal to give their Non-Stipulated Instruction No. 13, which read:

> The Colorado Workers' Compensation Act does not require
> that Defendants hold Plaintiff's job open during the duration
> of his inability to work.

Defendants suggest the court compounded this error further by refusing to give their proposed answer to a jury question which requested "information on Colorado law about workmans comp protection and if so how long it is in effect[.]"  (**Jury Note and Answer** at 1 [#123], filed February 25, 2022.)  Defendants again argued the court should tell the jury that the Colorado Workers Compensation Act did not require them to hold Mr. Archer's position open despite his inability to return to work, and further, that an employer could terminate an employee who was unable to work regardless whether he had filed a claim for workers compensation benefits.  (Tr. at 450-451.)  Instead, the court responded simply, "All of the law required to answer the questions in the Verdict Form is contained in the instructions of the court."   (**Jury Note and Answer** at 2.)

There was no error in refusing to give the proposed instruction or defendants' proposed answer to the jury's question.  Even if these proposed statements accurately

stated the law,[2] "[a] party is not entitled to a jury instruction just because it correctly states a proposition of law."  **Cox v. Wilson**, 971 F.3d 1159, 1171 (10th Cir. 2020), **cert. denied**, 141 S.Ct. 2596 (2021).  Not only must a proposed instruction be supported by the evidence, **see id.**, it also must not mislead the jury in its "understanding of the issues and its duties to determine th[ose] issues," **Considine v. Newspaper Agency Corp.**, 43 F.3d 1349, 1365 (10th Cir. 1994) (citation and internal quotation marks omitted).

Yet defendants' proposed Non-Stipulated Instruction No. 13 would have had precisely that effect.  Nothing about Mr. Archer's claim for wrongful termination in violation of public policy required the jury to consider what the Colorado Workers Compensation Act required *vel non*.[3]  **See Roe v. Cheyenne Mountain Conference Resort, Inc.**, 124 F.3d 1221, 1235 (10th Cir.1997) (elements of claim for retaliatory discharge in violation of public policy under Colorado law).  Although the statute creates

---

[2] Defendants' citation to the district court's opinion in **Baros v. Advantage Logistics USA West, LLC**, 2010 WL 1416812 (D. Colo. April 8, 2010), **aff'd**, 414 Fed. Appx. 130 (10th Cir. 2011), for this proposition is less than compelling.  For one thing, the statement on which defendants rely says nothing about what the Colorado Workers Compensation Act requires, but instead cites a District Court of Kansas case discussing Kansas law.  **See id**. at *8.  Moreover, the **Baros** court granted the defendant's summary judgment motion because the evidence was insufficient to show pretext.  **See id.**  Such was not the case here, and as the court was careful to point out, "[t]ermination due to a worker's exercise of his rights is distinct from termination due to an inability to do the work."  **Id.**  Given the evidence suggestive of pretext in this case, that was precisely the decision the jury was asked to make.

[3] Indeed, Mr. Archer's right to benefits arose not under the Colorado Workers Compensation Act but rather under the Defense Base Act, 42 U.S.C. § 1651(a), which "extends and incorporates the provisions of the Longshore and Harbor Workers' Compensation Act ('LHWCA'), 33 U.S.C. § 901, *et seq.*, to provide federal workers' compensation coverage for injuries suffered by certain classes of employees working outside the United States, including on military bases."  **Marshall v. Exelis Systems Corp.**, 2015 WL 1433274 at *3 (D. Colo. March 26, 2015).

the right, it does not give rise to the claim.[4]  **See Lathrop v. Entenmann's, Inc.**, 770 P.2d 1367, 1373 (Colo. App. 1989) (retaliatory discharge in violation of public policy is a common law claim).  **See also Rundle v. Frontier- Kemper Constructors, Inc.**, 170 F.Supp.2d 1075, 1080 (D. Colo. 2001) (claim for wrongful termination in violation of public policy is common law claim which does not "arise under" Colorado's Workers Compensation Act, and thus removal is not barred by 28 U.S.C. § 1445(c)).  Thus the only question properly before the jury was whether defendants' stated reason for Mr. Archer's termination was a pretext for retaliation based on his assertion of his right to workers compensation benefits.  Indeed, defendants appeared to clearly understand this as relevant issue in the case, since their closing arguments extensively addressed the question of pretext.

The proposed instruction and answer are entitled to no additional cache simply because defendants belatedly recharacterize them as stating their theory of defense.  While "[l]itigants are entitled to an instruction on their theory of the case if they submit sufficient evidence in support of that theory," **Arnold v. Curtis**, 359 Fed. Appx. 43, 47 (10th Cir. 2009), they are not entitled to have the jury consider issues which are irrelevant to the questions before it, **see United States v. Gallant**, 537 F.3d 1202, 1233 (10th Cir. 2008) (trial court did not err in declining to give theory of defense instruction which did not fit the facts of the case), **cert. denied**, 129 S.Ct. 2026 (2009).  **See also United States v. Wolny**, 133 F.3d 758, 765 (10th Cir. 1998) (theory of the defense

---

[4] A fact defense counsel explicitly recognized when it suited.  (**See** Tr. 281 (objection to the admission of Mr. Archer's treating physician's report:  "We're here about a retaliatory discharge claim rather than the underlying worker's compensation claim.").)

instruction required "only if, without the instruction, the district court's instructions were erroneous or inadequate").  Here, defendants' defense was not that they did not violate the Colorado Workers Compensation Act – that issue was irrelevant – but was simply that their reason for terminating Mr. Archer was not pretextual.

Moreover, defendants were able to – and did – make this argument to the jury in closing:

> [T]here is no part of the instruction that says Five Rivers was required to provide any leave to the plaintiff on account of his worker's compensation injury.  That is not the law.  The law does not obligate us to provide leave when somebody isn't able to work.

(Tr. 424.)  "When the other instructions establish a sound basis for an argument by the party to the jury on that proposition, an additional instruction is not essential and runs the risk of suggesting that the trial judge has adopted the party's view."  **Hertz v. Luzenac America, Inc.**, 370 F.3d 1014, 1023 (10th Cir. 2004).  Such was the case here, and thus there was no abuse of discretion in refusing defendants' proposed instruction and answer. **See Zokari v. Gates**, 561 F.3d 1076, 1090 (10th Cir. 2009); **Hall v. Claussen**, 6 Fed. Appx. 655, 667-68 (10th Cir. 2001).  Judgment as a matter of law thus is not warranted on this basis.

Defendants also pose a more general challenge to the overall sufficiency of the evidence.  Yet judgment as a matter of law under Rule 50(b) is appropriate only if the evidence so overwhelmingly supports one position that no reasonable inferences may be drawn from the evidence to sustain the position of the nonmovant.  **Tyler v. RE/MAX Mountain States, Inc.**, 232 F.3d 808, 812 (10th Cir. 2000).  "[I]n reviewing the record,

[the court] will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." **Hampton v. Dillard Department Stores Inc.**, 247 F.3d 1091, 1099 (10th Cir. 2001), **cert. denied**, 122 S.Ct. 1071 (2002) (internal quotation marks omitted). Judgment as a matter of law must be denied if there is any legally sufficient evidentiary basis for a claim. *Id*. I must consider the evidence and all inferences from it in favor of the nonmoving party. *Id*.; **see also Aquilino v. University of Kansas**, 268 F.3d 930, 933 (10th Cir. 2001). This is a rigorous standard which is appropriately deferential to the jury's verdict.

It is not satisfied in this case. Having reviewed the motion, the response, and the reply, I find and conclude defendants have not demonstrated they are entitled to judgment as a matter of law. I find the evidence presented at trial was not of such quality and weight as to establish irrefutably that reasonable people could not have arrived at the verdict this jury reached.

In support of their motion, defendants point out that Mr. Archer was an at-will employee who was entitled to only to twelve weeks of leave under their applicable policies, and that when Mr. Archer failed to contact them after being cleared to return to work by an Independent Medical Exam ("IME"), they determined he had abandoned his job. They argue that Mr. Archer's supervisor, Larry Lindloff,[5] was supportive of plaintiff throughout his leave, despite multiple, unassociated complaints which could have supported Mr. Archer's termination.

---

[5] Mr. Lindloff was a senior program manager for Five Rivers. While not Mr. Archer's direct supervisor at his duty station in Kuwait, he was the person in charge of, *inter alia*, assisting Mr. Archer with his claim for benefits. (*See* Tr. 109-110.)

6

The problem with this recitation is that it fails to account for *any* of the contrary evidence presented at trial. Indeed, to have accepted this version of events, the jury would have had to discredit much of the testimony Mr. Archer's counsel elicited from Mr. Lindloff on direct examination, as well as nearly all Mr. Archer's testimony. Reading the evidence in the light most favorable to the jury's verdict, as is appropriate under Rule 50(b), it shows defendants began considering involuntarily terminating Mr. Archer's employment in February 2018. (**See** Tr. Exhs. 51, 52, & 8 at D-000232; Tr. 146-149, 217.) Six weeks later, they changed the asserted reason for termination to job abandonment. From this fact alone, the jury properly could have inferred pretext. ***Whittington v. Nordam Group Inc.***, 429 F.3d 986, 994 (10th Cir. 2005). **See also** ***Litzsinger v. Adams County Coroner's Office***, 25 F.4th 1280, 1293 (10th Cir. 2022) ("[D]ifferent reasons for termination do not have to be contradictory to show pretext – they only need to undermine the credibility of the employer's proffered reason for termination.").

Moreover, the jury could infer from the evidence that this change was made "under circumstances that suggest dishonesty or bad faith." ***Twigg v. Hawker Beechcraft Corp.***, 659 F.3d 987, 1002 (10th Cir. 2011) (citation and internal quotation marks omitted). Mr. Lindloff acknowledged that none of the three circumstances constituting job abandonment under the apposite policy actually applied to Mr. Archer's situation. Specifically, Mr. Archer did not leave his job unannounced. He did not fail to return from his leave of absence on a date specified because there was no date specified for his return to work. Nor did he fail to report for work for three consecutive

7

days without notice, as he had not received the required clearance to be put back on the work schedule.  (*See* Trial Exh. 8 ¶ 4.3 at D-000233; Tr. 118-119, 120-122, 143-144, 159-163.)  "It is well-established that pretext can be shown by 'evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances.'"  *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1119 (10th Cir. 2007) (quoting *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir.2000)).  Given Mr. Lindloff's testimony in this regard, the jury easily could have inferred defendants did not believe in good faith that Mr. Archer had abandoned his job.  *See Hysten v. Burlington Northern Santa Fe Railway Co.*, 415 Fed. Appx. 897, 910 (10th Cir. 2011) (pretext may be shown where "employer believed that a relevant company policy existed[] and chose to deviate from the policy in spite of that belief").

Other circumstances surrounding Mr. Archer's termination provide additional evidence in support of the jury's verdict.  Although Mr. Lindloff and human resources representative Charlie Foley faulted Mr. Archer for not contacting them following the IME, Mr. Lindloff testified Mr. Archer typically only contacted him when there was a change in his status.  (Tr. 136-137.)  Although defendants may have seen the matter differently, it is not obvious that Mr. Archer was required to construe the results of the IME as the type of change in his status about which Mr. Lindloff would want to be informed.  Mr. Archer testified that after some initial confusion, he sent all information regarding his ongoing medical condition to the workers compensation insurer and communicated with Mr. Lindloff only regarding changes or updates which impacted his

fitness to return to work. (Tr. 260-261, 264-265.) Although the IME doctor found Mr. Archer fit to return to work, it was undisputed that it was Mr. Archer's treating doctor whose opinion was required to initiate the process to put him back on the work schedule. (Tr. 120, 254.) That doctor had not issued such an opinion; indeed, two days before the IME, he suggested Mr. Archer required surgery. (Tr. 276.)

Moreover, although Ms. Foley claimed she had attempted unsuccessfully to contact Mr. Archer (*see* Trial Exh. 6), the jury was entitled to credit Mr. Archer's testimony that he never received any calls or voice messages (Tr. 292-293, 297-298).[6] It was clear that neither Ms. Foley or Mr. Lindloff sent Mr. Archer an email, despite the facts that all prior communications with Mr. Archer were principally via email, and Mr. Archer consistently was responsive to emails from Mr. Lindloff. (Tr. 151-154, 268, 292-293, 297-298.) **See Garrett v. Hewlett-Packard Co.**, 305 F.3d 1210, 1220 (10th Cir. 2002) (evidence which showed not only procedural irregularities in ranking plaintiff for promotion but also employer's failure to inform plaintiff he had been placed in lowest possible rank, depriving him of notice or opportunity to improve on performance issues that allegedly caused ranking, supported inference of pretext). Nor did defendants make any effort to reconsider their decision, despite Mr. Archer's attempt to explain, which reasonably could have been interpreted by the jury as further evidence that they did not honestly believe Mr. Archer had abandoned his job. (Tr. 299-300.) Also, it would have been reasonable for the jury to construe defendants' presentation of

---

[6] Indeed, Mr. Archer testified that given the time difference between the U.S., where both Ms. Foley and Mr. Lindloff were located, and Kuwait, and the spotty cell phone coverage in-country, he communicated with them almost exclusively through email. (Tr. 268.)

9

evidence regarding other reasons it could have fired Mr. Archer but did not (such as running a side business or allowing his car to be used to bring alcohol onto base (*see* Tr. 99-100, 188-189, 202-203)) as not so much a sign of defendants' magnanimity but an attempt to obfuscate the real reason for his termination.[7]  Accordingly, I deny defendants' motion to set aside the jury's verdict as to liability.

While it is a somewhat closer question, there was sufficient evidence to permit the jury to infer that defendants' violation of Mr. Archer's rights was willful, thus supporting his claim for punitive damages.  Under Colorado law, "'willful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." §13-21-102(b), C.R.S.  "Where the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements of section 13-21-102 are met."  **Coors v. Security Life of Denver Insurance Co.**, 112 P.3d 59, 66 (Colo. 2005).  These requirements must be proved beyond a reasonable doubt.  §13-25-127(2), C.R.S.; **Qwest Services Corp. v. Blood**, 252 P.3d 1071, 1092 (Colo. 2011), *as modified on denial of reh'g* (June 20, 2011).  Although this is a heavy burden, *see* **Tri-Aspen Construction Co. v. Johnson**, 714 P.2d 484, 486 (Colo.1986), there is no need to produce more or different evidence than that proffered in support of a finding of willfulness, and the jury is "entitled to infer from [an employer's] pretextual explanations

---

[7] Especially in light of Mr. Archer's testimony that these incidents were misunderstandings of the circumstances and that Mr. Lindloff had accepted his reasonable explanations of the situations.  (Tr. 252-253, 274-275.)

for its actions that it knew its conduct was unlawful – and, thus, find the employer acted willfully," **Stroup v. United Airlines, Inc.**, 26 F.4th 1147, 1164 (10th Cir. 2022) (citation and internal quotation marks omitted, alterations in original).[8]

Based on the evidence presented at trial, there was a legally sufficient basis for the jury to have found beyond a reasonable doubt that defendants' actions with respect to Mr. Archer were willful and wanton. **See Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Although Mr. Lindloff and Ms. Foley interpreted the IME as triggering Mr. Archer's duty to return to work, Mr. Archer had been told that it was his treating physician's opinion on that issue which was determinative.[9] No one involved in the termination decision attempted to notify Mr. Archer that he was expected to return to work based on the results of the IME. That lapse could be viewed as especially reckless given Mr. Lindloff's acknowledgment that none of the circumstances which constitute job abandonment under the company's policy actually applied to Mr. Archer's situation. Further, Mr. Lindloff testified that, at the direction of Ms. Foley, he forwarded to the workers compensation insurer of an anonymous tip suggesting Mr. Archer was defrauding the insurer. (**See** Tr. 202-203, 219-220; Trial Exh. 14 at D-000507-000508; **see also supra** at 10 & n.7.) Here again, having not given Mr. Archer any chance to respond or explain, it would not be unreasonable to interpret that decision as at least reckless of

---

[8] Although the claim in **Stroup** arose under federal law,"Colorado and federal law apply the same standards to discrimination claims." **Johnson v. Weld County, Colorado**, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010).

[9] Nor had Mr. Archer been evaluated by Occu-Med, as required to put him back on the work schedule. (**See** Tr. 118-119.)

Mr. Archer's right to benefits, if not downright vindictive. Thus, defendants are not entitled to judgment as a matter of law on the issue of punitive damages.

Defendants' motion for a new trial on liability and damages fares no better, and for the same reasons. When a case has been tried to a jury, a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." **FED. R. CIV. P.** 59(a)(1)(A). A motion for new trial "is not regarded with favor and should only be granted with great caution," ***United States v. Kelley***, 929 F.2d 582, 586 (10th Cir.), ***cert. denied***, 112 S.t. 341 (1991), and then "only to correct manifest errors of law or to present newly discovered evidence," ***Elm Ridge Exploration Co., LLC v. Engle***, 721 F.3d 1199, 1216 (10th Cir. 2013). The decision whether to grant a new trial is committed to the sound discretion of the trial court. ***Kelley***, 929 F.2d at 586.

As noted above, there was no manifest legal error in refusing to give defendants' proposed instruction regarding the supposed parameters of the Colorado Workers Compensation Act or their requested answer to the jury's question. Both were irrelevant to the issues the jury was tasked with determining. Nor is a new trial warranted based on defendants' challenge to the sufficiency of the evidence. The evidence was more than sufficient to support the jury's verdicts as to both liability and damages.

**THEREFORE, IT IS ORDERED** that **Defendants' Motion for Judgment as a Matter of Law or, Alternatively, To Set Aside the Judgment and Order a New Trial** [#133], filed March 25, 2022, is denied.

Dated May 5, 2022, at Denver, Colorado.

**BY THE COURT:**

/s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge